# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 26, 2015 Session

## BENITA RENEE YOCUM v. JASON RICHARD YOCUM

**Appeal from the Circuit Court for Sevier County**
**No. 12-CV-1153-IV      O. Duane Slone, Judge**

---

### No. E2015-00086-COA-R3-CV-FILED-DECEMBER 15, 2015

---

This is a divorce action involving a five-year marriage between a husband who was employed overseas at the time of the parties' separation and a wife who had worked primarily during the marriage as a homemaker and caretaker of the parties' three minor children, including a child with special medical needs. Following a hearing in December 2012, during which the husband testified telephonically, the trial court ordered the husband to pay $3,500.00 per month in temporary support. Following subsequent hearings in April and May 2014, during which the husband also testified telephonically, the court, *inter alia*, granted the parties a divorce on stipulated grounds, delineated a residential co-parenting schedule, entered a judgment against Husband for support arrearage, and set the husband's child support obligation in the amount of $1,842.00 monthly and spousal support obligation in the amount of $1,000.00 monthly. The court reserved remaining issues for a bench trial, which it set for September 23, 2014, with notice that it would not allow the husband to testify telephonically unless the wife waived any objection to such testimony. At the beginning of trial, the court denied the husband's counsel's motion to allow the husband to testify telephonically upon the wife's objection. Also at the beginning of trial, the court ordered that the $1,000.00 previously ordered be continued as an award to the wife of alimony *in futuro*. The court also directed that its previous orders as to co-parenting time and child support be incorporated as a permanent parenting plan order. At the close of proof, the trial court distributed the marital estate and awarded to Wife $10,500.00 toward her attorney's fees. The husband appeals. Having determined that no income shares worksheet for child support purposes was attached to the final judgment, we vacate the amount of child support awarded and remand for the limited purpose of child support calculation according to the Child Support Guidelines based upon the trial court's previous findings concerning the parties' respective incomes and co-parenting time. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated in Part, Affirmed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

George T. Underwood, Jr., Knoxville, Tennessee, for the appellant, Jason Richard Yocum.

Benita Renee Yocum, Chillicothe, Ohio, Pro Se.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Benita Renee Yocum ("Wife"), and the defendant, Jason Richard Yocum ("Husband"), were married on April 28, 2007, in Ohio. They were married for five years prior to their separation in September 2012. Although Husband was employed overseas at that time, the parties had established a marital residence in Sevier County, Tennessee. They each had been married once before. Husband had adopted Wife's son from a prior relationship, and he also maintained co-parenting time with his daughter from a prior relationship. At the time of the September 2014 trial, the parties' oldest son was ten years old, and two younger sons born to the marriage were, respectively, six and three years of age (collectively, "the Children"). It is undisputed that the six-year-old child, A.Y., had been diagnosed with epilepsy, asthma, and some developmental delays, such that he required specialized medical care and more intensive caretaking in general than a typical child his age.[1]

Husband was thirty-three years old at the time of trial, and Wife was thirty-six years of age. Husband had been employed throughout the marriage as a safety manager by Exelis Mission Systems, working primarily in Afghanistan and Pakistan. During the marriage, Wife had primarily worked as a homemaker and caretaker of the Children. While residing in Tennessee, she had also been the registered owner of a small business known as Smoky Mountain Risk Management, which had apparently stopped doing business by the time of trial. According to Wife, she had earned some income completing projects at home for Goodwill Industries, Inc. ("Goodwill"). The trial court found that Husband earned approximately $130,000.00 per year while Wife earned approximately $5,000.00 yearly.

---

[1] In an effort to protect the privacy of the Children, we will not name them individually in this opinion. However, because care required by A.Y. impacted the trial court's awards of child support and spousal support, we will identify him solely by initials for purposes of our analysis.

2

Wife, acting through her former counsel, attorney Michael J. Green, Jr., filed a complaint for divorce in the Sevier County Circuit Court ("trial court") on September 19, 2012. She alleged irreconcilable differences or, in the alternative, inappropriate marital conduct on the part of Husband. She requested, *inter alia*, that the trial court designate her the primary residential parent of the Children, adopt her proposed temporary parenting plan, and grant her temporary spousal and child support. Wife proposed that the Children reside with her all 365 days of the year and that Husband be granted only supervised visitation with the Children until he had completed a mental health evaluation, parenting classes, and anger management classes.

On September 28, 2012, the trial court entered an agreed order consolidating the divorce action with an order of protection matter pending between the parties. Husband was represented at the time by his former counsel, attorney Felisha B. White. Wife previously had obtained an *ex parte* order of protection against Husband. The agreed consolidation order provided that the *ex parte* order of protection would "remain in effect with no presumption of correctness, nor finding of fault against either party" pending further proceedings. The agreed order also granted to Husband a few days of unsupervised co-parenting time with the Children during Husband's September 2012 return to Tennessee while on leave from his employment.

On October 3, 2012, Husband filed, *inter alia*, an answer to the complaint for divorce and a counter-complaint. He admitted that irreconcilable differences existed between the parties but denied all other allegations against him. Husband averred that Wife had engaged in inappropriate marital conduct and adultery. As to co-parenting, Husband filed a proposed temporary parenting plan, proposing that while he was working overseas and home on leave for twenty-one days every three months, the Children reside with him for the full twenty-one days of his leave periods. Wife subsequently filed an answer to Husband's counter-complaint, denying all allegations against her. Upon motion, the trial court entered an order on November 26, 2012, allowing Husband's counsel to withdraw from representation.

Meanwhile, Wife filed motions on November 9, 2012, requesting leave to relocate with the Children to Ohio, requesting that the trial court find Husband in contempt of court for failure to timely pay support, and giving notice of a hearing scheduled for December 10, 2012. As to the motion to relocate, Wife averred that A.Y. had been referred by her physician in Tennessee to Nationwide Children's Hospital ("Nationwide") in Columbus, Ohio, for further diagnosis and treatment. She further averred that her family, as well as some friends and family members of Husband, resided near Nationwide and that she had been offered employment and secured a residence near Nationwide.

Acting through his current counsel, Husband responded on December 3, 2012, by filing a motion to quash Wife's hearing notice. The trial court treated Husband's motion as one for continuance and subsequently denied it. Following a hearing during which both parties testified telephonically with their respective counsel present, the court entered a "Temporary Support Order" on December 7, 2012. The court directed Husband to pay Wife $3,500.00 per month "in support" "without a presumption of correctness." The court directed Wife to utilize this support to "maintain household expenses," which were set forth in an attached handwritten list. This expense list included monthly payments due toward liens on titles to the parties' two vehicles: $663.14 for the van driven by Wife ("Van") and $222.17 for the truck typically driven by Husband when he was home ("Truck").

Husband subsequently filed a motion for contempt on December 14, 2012, averring that Wife had relocated the Children to Ohio without leave to do so from the trial court. Following a hearing conducted on January 11, 2013, the court granted Wife "temporary leave of the Court to relocate to Ohio [for] the purpose of securing diagnosis and treatment for the parties' minor child." Wife was present at the hearing while Husband testified via telephone. The court further directed Husband to pay Wife previously ordered support in the amount of $3,500.00 per month and to pay any arrearage in full. The court reserved the issues of Wife's motion to permanently relocate and Husband's motion for contempt. An order memorializing this ruling was entered on March 22, 2013, *nunc pro tunc* to January 11, 2013.

On July 11, 2013, the trial court entered an agreed order substituting attorney David D. Noel in place of attorney Green as counsel for Wife. Acting through attorney Noel, Wife filed a motion on August 2, 2013, requesting that the court issue a wage assignment to Husband's employer. Husband responded by filing a motion on August 7, 2013, requesting reconsideration of the $3,500.00 in support previously ordered and averring that Wife previously had misrepresented her expenses to the trial court. Husband asserted that due to the "financial hardship" of the support award, he had been unable to afford courses needed to maintain his professional certifications and that therefore "his earning capacity [had] become severely jeopardized." Husband simultaneously filed a motion for contempt, alleging that Wife had failed to make payments for the Van and Truck and that he had been forced to make those payments to prevent repossession of the vehicles.

The trial court subsequently entered an agreed order substituting attorney Rebecca C. McCoy for attorney Noel as Wife's counsel on August 13, 2013. The parties first participated in mediation in October 2013 but resolved no issues. Following a hearing, the court entered an order on November 25, 2013, setting Husband's co-parenting time during the upcoming holiday weekend. Following the Thanksgiving holiday, Husband

4

apparently filed a motion for contempt, alleging that Wife had willfully interfered with his court-ordered co-parenting time during his holiday leave.[2] Wife filed a response on December 19, 2013, asserting that she had attempted to drive from Ohio to Tennessee with the Children in time for the court-ordered visitation but had been forced to reverse direction in Georgetown, Kentucky, when A.Y. began to suffer seizures. Wife subsequently filed a motion for contempt against Husband on January 14, 2014, alleging that Husband had failed to pay support according to the court's order. Husband filed a response on March 11, 2014.

Following a hearing conducted on April 2, 2014, at which Husband testified by telephone upon agreement of the parties, the trial court found that although Wife had interfered with Husband's co-parenting time, her interference had not been willful and therefore did not constitute contempt of court. The court further found Husband to be in willful contempt of court for non-payment of support. The court reserved judgment as to any sanctions to be imposed against Husband but awarded Wife a judgment in the amount of $19,935.00 for unpaid support. The court found Husband's income to be $130,000.00 annually and Wife's to be $5,000.00 per year. In addition, the court set a residential co-parenting schedule to be in effect as long as Husband was "working and living outside the continental U.S.A.," which provided six weeks of co-parenting time to Husband with the Children when he was on leave from employment. Upon these findings, the court directed counsel for the parties to calculate child support and reserved the issue of spousal support.

Upon Wife's subsequent motion for entry of an order and Husband's motion for reconsideration, the trial court conducted a hearing on April 28, 2014. Following the presentation of proof, the court set Husband's child support obligation in the amount of $1,842.00 monthly and awarded to Wife $1,000.00 monthly in spousal support. The court accordingly granted Wife's motion for wage assignment to Husband's employer in the amount of $2,842.00. In addition, the court directed that Husband would assume responsibility for the Truck payment and related insurance while Wife would maintain responsibility for the Van payment and related insurance. The court entered an order on the same day, memorializing these findings.

On May 9, 2014, Husband filed a motion to modify the spousal support order and a motion for contempt, alleging that Wife had failed to make a Van payment. Wife's counsel filed a motion for permission to withdraw on May 14, 2014, citing Wife's failure to pay attorney's fees. Wife, acting *pro se*, and Husband each respectively filed motions objecting to Wife's counsel's withdrawal. Also representing herself, Wife filed a response to Husband's motion to modify spousal support and for contempt on May 20,

---

[2] Although this motion is not in the record on appeal, Wife's response to the motion and the court's subsequent proceedings regarding the motion are in the record.

2014. She subsequently filed a motion for criminal contempt on May 27, 2014, alleging that Husband had failed to pay the full amount of child support due.

The trial court conducted a hearing on May 28, 2014, at which counsel for both parties appeared. Wife's counsel's motion for withdrawal had not yet been granted, and counsel continued to represent Wife during this hearing. By agreement of the parties, Husband testified telephonically. The court heard testimony regarding Husband's motions for contempt and to modify support. At the close of the hearing, the court granted the parties a divorce on stipulated grounds pursuant to Tennessee Code Annotated § 36-4-129 (2014). Finding that Wife had not willfully interfered with Husband's co-parenting time and that Wife had been unable to make a court-ordered Van payment, the court denied Husband's motion for contempt. The court also denied Husband's motion to modify spousal support, directing Husband to continue paying previously ordered child support in the amount of $1,842.00 monthly and spousal support in the amount of $1,000.00 monthly. The court credited Husband with a May 2014 payment he had made on the Van in the amount of $663.14. In its subsequent written order, entered June 12, 2014, the trial court reserved "[a]ll remaining issues between the parties including the equitable division and distribution of assets and liabilities" pending a final hearing, which the court set for September 23, 2014. The court ordered the parties to again participate in mediation by August 31, 2014. In addition, the court granted Wife's counsel's motion to withdraw and gave notice to Husband that he would not be allowed to testify by telephone at the final hearing unless Wife agreed to waive her right to object to such testimony. The parties participated in mediation a second time on August 15, 2014, but resolved no issues.

On September 12, 2014, Husband filed a motion to adjust child support and terminate any further spousal support. He attached an affidavit in which he, *inter alia*, asserted that he "must appear by telephone at the final hearing for divorce currently set for September 23, 2014," out of necessity. One week before trial was scheduled to begin, Wife also filed several new motions, which, upon Husband's subsequent motion to strike, the court dismissed as untimely during the final hearing.

The trial court held the final hearing on September 23, 2014, during which Wife represented herself and Husband was represented by counsel. Husband was available by telephone but was not permitted by the court to testify telephonically over Wife's objection to such testimony. Husband's counsel then moved for a continuance, which the court denied. The court clarified that the type of spousal support awarded was alimony *in futuro*, to be modifiable in the future upon demonstration of a significant change in Wife's need or Husband's ability to pay. The court also explicitly found that the co-parenting terms delineated in the June 12, 2014 order were in the Children's best interest and would be incorporated into a permanent parenting plan order to be entered

6

concomitant with the final judgment for divorce. The court further clarified that Wife would be designated the primary residential parent.

The trial court thus narrowed the remaining issues to be addressed during trial as the equitable distribution of the marital estate, the parties' competing motions for contempt, and the parties' respective requests for attorney's fees. Following the presentation of proof, the court distributed the marital estate. As to assets, the court awarded to each party the personalty in that party's possession, the Truck to Husband and the Van to Wife, and any marital interest in stereo equipment to Husband. The remainder of the distribution concerned marital debt. Because the court found that the parties held greater equity in the Truck than in the Van, the court stated that it was attributing the debt associated with the Van to Husband to offset the greater equity he received in the Truck. In addition to the debt owed on the vehicles, Husband was ordered to assume responsibility for a total of $4,664.72 in marital debt while Wife was ordered to assume responsibility for a total of $4,200.00 in marital debt. Wife had testified regarding debt she owed to her father, Mr. Bower, for his payment of living expenses and attorney's fees during the pendency of the divorce. The court determined that Wife was solely responsible for any debt owed to Mr. Bower. The court further determined, however, that much of Wife's indebtedness to Mr. Bower was due to Husband's willful failure to pay child and spousal support. The court therefore confirmed its previous arrearage judgment against Husband in the amount of $19,935.00 and also awarded attorney's fees to Wife in the amount of $10,500.00. All outstanding contempt issues were dismissed.

The trial court entered a Final Decree of Divorce on December 15, 2014, *nunc pro tunc* to the date of the September 23, 2014 hearing, incorporating the April 28, 2014, and June 12, 2014 orders by reference. The court also entered a permanent parenting plan order commensurate with its findings. The court did not, however, attach an income shares worksheet pursuant to Tennessee's Child Support Guidelines. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(1)(b). In the interim, the parties filed several competing motions concerning Wife's proposed wage garnishment against Husband for the lump-sum judgments and Husband's subsequent allegation that Wife had violated the court's order by interfering with his request to exercise co-parenting time in Tennessee during the Christmas holiday.

On December 23, 2014, the trial court entered an Amended Final Decree of Divorce, also *nunc pro tunc* to September 23, 2014. The court clarified an exhibit attachment and made some editing corrections, but no substantive changes were made to the final decree. Husband timely appealed.[3]

---

[3] Upon Wife's motion to dismiss the appeal as untimely, this Court entered an order on February 9, 2015, denying the motion and finding that Husband timely appealed from the amended final judgment pursuant to Tennessee Rule of Appellate Procedure 4(a). Upon a subsequent motion filed by Wife seeking to have

## II. Issues Presented

Husband presents six issues on appeal, which we have restated as follows:

1.    Whether the trial court erred by barring Husband from testifying by telephone during trial.

2.    Whether the trial court erred by declining to grant Husband's motion for invocation of the witness sequestration rule at the beginning of trial as to Wife's father.

3.    Whether the trial court erred by allowing Wife to testify using a file folder containing documents, never admitted into evidence, that the court found to contain hearsay.

4.    Whether the trial court erred in setting the amount of Husband's child support obligation.

5.    Whether the trial court erred in the type, duration, and amount of alimony awarded to Wife.

6.    Whether the trial court erred by finding that Wife did not have a bailment duty regarding Husband's stereo and sound system.

## III. Standard of Review

The standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

---

this Court vacate a post-judgment order entered by the trial court to quash a garnishment, this Court denied the motion in an order entered March 4, 2015, determining that "[t]o the extent the appellee seeks enforcement of the judgment on appeal, or relief from an order staying enforcement of the judgment pending appeal, she should seek such relief in the Trial Court." *See First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 n.8 (Tenn. Ct. App. 2001) ("[P]erfecting an appeal does not prevent the trial court from acting with regard to ancillary matters relating to the enforcement or collection of its judgment.").

This Court has described the proper standard of review for child support determinations as follows:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

> * * *

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 463 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young*

*v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Telephonic Testimony

Husband contends that the trial court erred by barring him from testifying via telephone during the September 23, 2014 trial when Wife refused to waive her right to object to such testimony. He argues that it was unreasonable for the court to leave the decision of whether Husband's telephonic testimony would be allowed to the discretion of Wife, particularly because the court had allowed Husband to testify by telephone at previous hearings. He further argues that in the alternative, the court erred by denying his subsequent motion to continue the trial. Wife asserts that the trial court properly denied Husband's request because the court had previously ordered Husband to be present for trial and allowed Husband ample time to make arrangements to appear. Upon our thorough review of the record and applicable authorities, we conclude that the trial court did not err by denying Husband's request to testify by telephone and motion to continue.

We note at the outset that "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis,* 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984). Our Supreme Court has recently noted that "Tennessee law permits testimony by telephone in only a handful of narrowly drawn circumstances." *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014). In *Kelly*, the Court delineated examples of circumstances when telephonic testimony is allowed by statute as follows:

> Tenn. Code Ann. § 24-7-121(d) (2000) (permitting telephonic testimony regarding payment records in child support cases); Tenn. Code Ann. § 34-8-106(b) (Supp. 2013) (permitting witnesses located in other states to testify by telephone in conservatorship or guardianship proceedings); Tenn. Code Ann. § 36-1-113(f)(3) (2010 & Supp. 2013) (permitting an incarcerated parent or guardian to participate by telephone in a hearing to terminate parental rights); Tenn. Code Ann. § 36-5-2316(f) (2010) (permitting a witness located in another state to testify by telephone in cases under the Uniform Interstate Family Support Act); Tenn. Code Ann. § 36-6-214(b) (2010) (permitting a witness located in another state to testify by telephone in cases under the Uniform Child Custody Jurisdiction and Enforcement Act).

11

*Id.* at 693 n.1. As our Supreme Court further explained in *Kelly*:

Testimony in civil cases is generally governed by Tenn. R. Civ. P. 43.01, which states:

In all actions at law or equity, the testimony of witnesses shall be taken pursuant to the Tennessee Rules of Evidence. Also, for good cause shown in compelling circumstances and with appropriate safeguards, the court may permit presentation of testimony in open court by contemporaneous audio-visual transmission from a different location.

In addition to live testimony, this rule contemplates the use of contemporaneous audio-visual (but not audio only) transmissions. And even then, good cause, compelling circumstances, and adequate safeguards must be established before testimony by video conferencing may be allowed. *See* Tenn. R. Civ. P. 43.01 Advisory Comm. Cmt.

\* \* \*

There are important reasons why live, in-person testimony is more desirable than remote testimony. One frequently cited list explains that a witness's personal appearance in court (1) assists the trier of fact in evaluating the witness's credibility by allowing his or her demeanor to be observed first-hand; (2) helps establish the identity of the witness; (3) impresses upon the witness the seriousness of the occasion; (4) assures that the witness is not being coached or influenced during testimony; (5) assures that the witness is not referring to documents improperly; and (6) in cases where required, provides for the right of confrontation of witnesses. *Bonamarte v. Bonamarte,* 263 Mont. 170, 866 P.2d 1132, 1134 (1994); *see also* Michael J. Webber, *Permissibility of Testimony by Telephone in State Trial,* 85 A.L.R. 4th 476 (1991).

*Id.* at 693-94 (emphasis added).

*Kelly* involved appellate review of the trial court's partial reliance on the telephonic testimony of a child's school guidance counselor when determining the best interest of one of the parties' children while entering a permanent parenting plan concomitant with the parties' judgment of divorce. *Id.* at 687-91. The *Kelly* Court noted that the parties had "pointed to no Tennessee law or rule that would permit testimony by

12

telephone in cases such as this one." *Id.* at 693-94. In the case at bar, we likewise determine that no Tennessee law or rule provides for a right to testify by telephone in a divorce action such as this one. In *Kelly*, our Supreme Court also concluded, however, that inasmuch as "neither party objected to the fact that the counselor was testifying by telephone," the Court would, "therefore, address this issue of first impression and determine the scope of review that appellate courts should employ when reviewing testimony provided by telephone." *Id.* at 694. The Court ultimately held that "[a]lthough Tennessee law does not expressly provide for live trial testimony via telephone, we have determined that when such testimony occurs, it should be reviewed on appeal using the same deferential standard as live in-person testimony." *Id.* at 697.

In contrast to the circumstances in *Kelly*, at the beginning of trial in the instant action, Wife clearly objected to Husband's oral motion to testify via telephone,[4] and the court had clearly ordered that Husband "shall be physically present at the Final Divorce hearing . . . ." The record reflects that by agreement of the parties, Husband had testified telephonically during several previous hearings. During one of these hearings on May 28, 2014, the trial court set the date for trial on the remaining issues for September 23, 2014. Wife's counsel raised the issue of whether Husband would be allowed to testify by telephone. The following exchange ensued:

| | |
|---|---|
| Wife's Counsel: | Your Honor, I will say on [Wife's] behalf, [Husband] needs to be here for that trial date. This is an impossible situation for her, no matter who represents her. |
| Husband [by telephone]: | Yeah, your Honor, I would object to that. It's so expensive, cost prohibitive. |
| The Court: | Let me make this clear. At the final trial of this matter on any reserved issues, [Husband], you will have to be here. But I'm going to give you a trial date far enough in advance that you're going to have to make the arrangements. It's going to be – |
| Husband: | Your Honor, I don't know that I can be, because the trip there will affect my job and I'll possibly lose my job. |

---

[4] Prior to making this oral motion, Husband previously had attached to his motion to adjust child support and terminate spousal support, filed on September 12, 2014, an affidavit in which he stated, *inter alia*, "[o]ut of necessity I must appear by telephone at the final hearing for divorce . . . ."

13

The Court: Well, let me say this. The only way that your absence would be permitted would be by agreement of [Wife]. And so otherwise, you know, we can't really litigate this case. I've got to be here. I've got – the trial court, any issues affecting credibility. I've got to be able to look at the person instead of just hear from them.

The trial court subsequently entered an order on June 12, 2014, memorializing its findings and conclusions of law made during the May 28, 2014 hearing. The court, *inter alia*, granted the parties a divorce on stipulated grounds and reserved remaining issues for final hearing. Regarding Husband's request to testify telephonically, the court stated:

> The Final Divorce hearing is hereby scheduled for September 23, 2014. Unless the remaining issues in this case are resolved through the court ordered mediation the Husband shall be physically present at the Final Divorce hearing so the Court can evaluate demeanor and make other credibility determinations required by law.

The record indicates that by the time of trial, Wife had never expressed agreement to waive the requirement that Husband testify in person. At the beginning of trial, the court questioned Wife regarding whether she was willing to waive such requirement, to which she replied unequivocally that she was not. The court in its amended final decree summarized as follows:

> Pursuant to the Court's previous order, Husband, who is employed out of the country, was allowed to be present by telephone for the purpose of listening to the proceedings and assisting counsel. However, he was not permitted to testify without the consent of Wife.

The trial transcript reflects that Husband was listening to the proceedings via telephone throughout the hearing and at all times was represented by counsel.

We conclude that the trial court properly denied Husband's request to testify by telephone over the objection of the opposing party. We further conclude that the trial court did not abuse its discretion by denying Husband's subsequent motion to continue the trial. *See In re Zacharias T.M.*, 403 S.W.3d 212, 224 (Tenn. Ct. App. 2012) ("The granting or denial of a motion for continuance lies in the sound discretion of the court."). In so concluding, we particularly note the nearly four-month advance direction the court gave Husband that he would need to appear in person and the fact that Husband had

14

apparently not managed to appear before the court in person throughout the divorce proceedings.

## V. Witness Sequestration Rule

Husband asserts that the trial court erred by declining to grant his motion for invocation of the witness sequestration rule, Tennessee Rule of Evidence 615 ("the Rule"), at the beginning of trial as to Wife's father, Edward Bower, for the purpose of impeachment or rebuttal. Wife maintains that because she was not calling Mr. Bower as a witness and Husband did not subpoena him, the trial court properly declined to invoke the Rule. Upon careful review, we determine that the trial court did not err by denying Husband's motion.

Tennessee Rule of Evidence 615 provides:

At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

As Husband notes, the Rule may be invoked at any time, and the language of the rule is mandatory. *See State v. Anthony*, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992); *State ex rel. Comm'r, Dep't of Transp. v. Williams*, 828 S.W.2d 397, 402 (Tenn. Ct. App. 1991) (concluding that "[g]iven the mandatory language of Tenn. R. Evid. 615," it was an abuse of discretion for the trial court to admit the testimony of a judge who had been present in the courtroom for much of the trial despite the judge's presumed ability to refrain from altering his testimony to conform with proceedings). A trial court, however, has "wide discretion in determining whether to exclude a witness suspected of violating the Rule." *Id.* "'When a sequestration rule violation is raised on appeal, the court shall consider the seriousness of the violation and the prejudice, if any, suffered by the defendant.'" *In re Johnny K.F.*, No. E2012-02700-COA-R3-PT, 2013 WL 4679269 at *9 (Tenn. Ct. App. Aug. 27, 2013) (quoting *State v. Reid,* No. M2001-02753-CCA-R3-DD,

2003 WL 23021393 at *45 (Tenn. Crim. App. Dec. 20, 2003), *aff'd by State v. Reid*, 164 S.W.3d 286 (Tenn. 2005)).

The case at bar presents an unusual issue, however, in that an assignment of error regarding the Rule typically occurs when a trial court invokes the Rule and subsequently permits a witness to testify who was present in the courtroom for some portion of prior proceedings or was exposed to a record of those proceedings in violation of the Rule. *See, e.g., In re Johnny K.F.*, 2013 WL 4679269 at *9 (concluding that the trial court abused its discretion in a parental rights termination action by permitting the father's friend to testify during the second day of trial after she had been present in the courtroom during the first day); *In re Bowers v. Bowers*, No. M2010-00311-COA-R3-CV, 2011 WL 1344258 at *7 (Tenn. Ct. App. Apr. 7, 2011) (concluding that the trial court in a post-divorce action did not abuse its discretion in barring the husband's friend from testifying when the husband's counsel previously had transmitted a transcript of opening statements to the friend).

Prior to opening statements at trial in this case, the following exchange ensued:

| | |
|---|---|
| Husband's Counsel: | Before we get started, Your Honor, I'd ask for the rule, that Ed Bower be asked to step outside. |
| The Court: | Will you be testifying? |
| Mr. Bower: | No, sir. |
| The Court: | Okay. |
| Husband's Counsel: | I'd ask that he be excused, Your Honor. |
| The Court: | He's not going to testify. |
| Husband's Counsel: | Well, Your Honor – |
| The Court: | You're not permitted to ask him to be excused. He's not going to testify. |
| Husband's Counsel: | Well, Your Honor, you haven't asked me whether I was going to call him as impeachment or rebuttal. |
| The Court: | Have you subpoenaed him? |

16

| | |
|---|---|
| Husband's Counsel: | Your Honor, he doesn't have to be subpoenaed for impeachment or rebuttal. |
| The Court: | Okay. You haven't subpoenaed him. Is he on your witness list? |
| Husband's Counsel: | No, Your Honor. |
| The Court: | Overruled. |

Mr. Bower did not testify at any time during the proceeding. In contrast to an alleged violation by a witness of Rule 615, Husband asserts here that the trial court abused its discretion by declining to order Mr. Bower to vacate the courtroom after Wife confirmed that she would not be calling him as a witness and after Husband's counsel acknowledged that he had not subpoenaed Mr. Bower or placed him on a list of potential witnesses. *See* Tenn. R. Civ. P. 45.01 (providing the procedure to issue subpoenas for attendance of witnesses). Husband argues that his case was prejudiced because once Mr. Bower had remained in the courtroom, it no longer would have been advantageous to call him as a witness to rebut or impeach Wife's testimony regarding her living expenses and debt owed to her father.[5] We find this argument to be unavailing, particularly in light of the fact that if Mr. Bower had chosen not to accompany his daughter to the hearing that day, he would not have been available as a potential witness because Husband had not taken any advance action to secure his presence. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Husband also argues that the trial court's denial of his request to exclude Mr. Bower from the courtroom prejudiced Husband's case because Mr. Bower "coached" Wife. In support of his argument, Husband references a portion of the transcript in which the following occurred during Wife's direct testimony:

| | |
|---|---|
| Husband's Counsel: | Now, Your Honor, Mr. Bower, who I asked to be sent outside, is now coaching [Wife], and that's another reason I wish Mr. Bower were outside this courtroom, Judge. |

---

[5] A rebuttal witness is a witness called "to explain or controvert evidence produced by an adverse party." *See Cozzolino v. State,* 584 S.W.2d 765, 768 (Tenn. 1979), *abrogated on other grounds by State v. Reid,* 91 S.W.3d 247 (Tenn. 2002).

17

| | |
|---|---|
| Wife: | Your Honor, if I may. The agreement that you're reading right now, in a declaration affidavit of [Husband] signed on it looks like the 19th day of July – |
| Husband's Counsel: | And, again – |
| Wife: | -- number 2A "I have a rent-to-own agreement with my landlord whereby I must be able to secure financing." |
| The Court: | And where did your – where is that? Is that a response to discovery? |
| Wife: | That was attached to a motion that [Husband's counsel] filed. |
| The Court: | Pass it to the court officer. |
| Wife: | Motion to expand. |
| Husband's Counsel: | And, again, Your Honor, this is some of the coaching from Ed Bower who I think is a law student at LMU who has been playing attorney for [Wife][6] which is another reason I ask that Mr. Ed Bower be – |
| The Court: | And he's not – |
| Husband's Counsel: | -- outside the courtroom. |
| The Court: | And I've already ruled on that motion. I'm going to ask you not to – |
| Husband's Counsel: | I'm just trying to make it clear to the Court why we wanted him excused but he's still in the courtroom. |

---

[6] Wife insists in her brief on appeal that Mr. Bower had never attended law school.

| | |
|---|---|
| The Court: | And he's behind the bar and the Court has allowed him to remain present. |
| Husband's Counsel: | Talking across the bar.

And, again, Judge, I just have to protect my record.  So it's clear, Mr. Bower has not been sworn. |
| The Court: | The Court's heard no testimony from him.

Okay.  So any other issues, [Wife]? |
| Wife: | We have the willful contempt that you reserved hearing on or punishment on for [Husband].  You reserved that back in – whenever the final hearing.  That was April 2nd was when that order was. |
| The Court: | Willful contempt because he didn't pay the one payment? |
| Wife: | Yes. |
| The Court: | Is that what you're talking about? |
| Wife: | No, no, no.  For – that's the same day that the 19,000 some-odd dollar judgment was issued.  He was then found in willful negligent contempt for – |
| The Court: | I found him in contempt? |
| Wife: | Yes, and reserved it – |
| The Court: | Right. |
| Wife: | -- for the final hearing. |
| The Court: | Okay.  Thank you.  That did need to be cleared up.  The Court will – there will be no |

19

punishment with regard to jail time or any other sanctions with regard to that issue. Thank you for bringing that to my attention.

Husband does not dispute that throughout the hearing, Mr. Bower was "behind the bar" and not alongside Wife before the trial court. Wife asserts in her brief on appeal that at the point when Husband objected to Mr. Bower's "talking across the bar," Mr. Bower had whispered one word, "Reserved," which she understood to constitute a reminder to raise an issue that the court had reserved for final hearing. Even assuming, *arguendo*, that Mr. Bower's action constituted coaching Wife, we note that the trial court immediately ruled in Husband's favor on the reserved issue Wife raised regarding possible punishment associated with the court's previous finding of contempt. Husband's case clearly was not prejudiced by Wife's prompting the court to rule on this reserved issue, and Husband cites no other such instance. Moreover, upon our thorough review of the record, we determine that the trial court exercised "appropriate control over the presentation of evidence and conduct of the trial" during Wife's testimony as a self-represented party. *See* Tenn. R. Evid. 611(a). We conclude that the trial court did not abuse its discretion in denying Husband's request to exclude Mr. Bower from the courtroom.

## VI. Document Hearsay Objection to Wife's Testimony

Husband also asserts that the trial court erred by allowing Wife to consult a file folder of documents containing hearsay during her testimony at trial. *See* Tenn. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Tenn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise by law."); *see also Godbee v. Dimick*, 213 S.W.3d 865, 894 (Tenn. Ct. App. 2006). Upon careful review, we determine that the court allowed Wife to use only one self-generated writing from this file and allowed that use solely for the purpose of refreshing Wife's memory, in compliance with Tennessee Rule of Evidence 612.

Tennessee Rule of Evidence 612 provides in relevant part:

If a witness uses a writing while testifying to refresh memory for the purpose of testifying, an adverse party is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion

20

withheld over objections shall be preserved and made available to the appellate court in the event of appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires . . . .

The Advisory Commission Comments to Rule 612 explain that "[o]nly writings used 'while testifying' are subject to opposing counsel's inspection."

The record reflects that when Wife proceeded to the witness stand to offer direct testimony, she carried with her a red file folder. Upon Husband's objection that he had not seen the documents contained within the red file folder, the court allowed Wife to consult only one sheet of paper at the top of the file upon which she had summarized what she believed to be marital debts. After Wife had proffered testimony regarding these debts, the following exchange occurred as relevant to Husband's hearsay objection:

| | |
|---|---|
| The Court: | Now, [Husband's counsel] was going on about your looking at your notes to get that information. What sort of documentation is that you're relying on there? |
| Wife: | Just my print-up. |
| The Court: | Now, how do you arrive at that – |
| Wife: | From – |
| The Court: | -- that sheet there? |
| Wife: | From these bills. The insufficient funds was from my bank statements. |
| Husband's Counsel: | Your Honor, when she said "these bills," she held up the red folder. |
| The Court: | All right. |
| Wife: | And these – |
| Husband's Counsel: | Your Honor, I'm going to ask the Court if we can mark that as an exhibit and make it part of the record, please, everything that's in there. |

The Court: Well, right now she hasn't – the only thing she's referred to is the one white sheet –

Wife: That's all I –

The Court: -- that's in front of her right now so that the record's clear. That's the only thing she's referred to and she just now did it with regard to the $2,500 she's saying was insufficient funds.

Husband's Counsel: I understand that, Your Honor, respectfully, but because the issue is whether or not she should have been allowed to take that red folder –

The Court: I've already made the ruling.

Husband's Counsel: I understand. I understand. What I'm asking the Court is if we can mark that as an exhibit –

The Court: No, sir.

Husband's Counsel: -- and make it part of the record.

The Court: No, sir.

Husband's Counsel: All right. The Court –

The Court: She hasn't used it; she hasn't relied upon it.

Husband's Counsel: She has.

The Court: She's not using it now.

Husband's Counsel: She is. That was in –

The Court: She's using –

Husband's Counsel: -- the folder.

The Court: -- the one white sheet.

22

Stop talking over me. That's the last time I'm going to tell you.

All right. [Husband's counsel], I'm going to give you – now, this sheet, do you have to have that to testify?

Wife: It just has the exact figures on it. I don't have the exact figures –

The Court: Now, is that one sheet a summary of the indebtedness that you have?

Wife: Yes, outstanding marital debts.

The Court: Okay. You've supplied that to him prior to today?

Wife: I did.

Husband's Counsel: She has not. You have not.

Wife: It is Exhibit 3 that's attached to petitioner's motion for a default judgment on property division which was sent serviced on [Husband's counsel] on September 16th.

The Court: Did you get that in that form?

Husband's Counsel: I have not, Judge. And, again, that's part of the motion to strike and that's one of the things that she filed in violation of –

The Court: I'm not hearing that, but as it – but we can consider the materials that might assist you, that might assist her, it might assist me in trying to find out what, you know, the issues are that need to be decided with regard to the marital assets, marital debt, and how to make an equitable division of both.

23

| | |
|---|---|
| Husband's Counsel: | Again, Your Honor – |
| The Court: | Now, your objection though is that right now as with regard to her using this document to refresh – it's basically to refresh her memory – |
| Husband's Counsel: | She has – |
| The Court: | -- and as – as it might compromise on hearsay. So the – and this is where you put yourself at a real disadvantage. The – I'm going to allow you – I want you to – you know, you said you sent it to him. Did you – do you want to take a look at this and make sure it's the same document she sent you? She's – |
| Husband's Counsel: | Your Honor, I did not – |
| The Court: | In regard to the summary of indebtedness. |
| Husband's Counsel: | Your Honor, I did not get this document, and it's dated the same date that I've already filed the motion to strike on. |
| The Court: | Okay. |
| Husband's Counsel: | I'd like to mark it because she's already tes – she has no independent recollection. |
| The Court: | She didn't say she didn't have any independent recollection of anything except for the –we're talking about the insufficient funds now. |
| Wife: | No. |
| The Court: | Now – |
| Wife: | I'm sorry, Your Honor. |
| The Court: | Go ahead. |

| | |
|---|---|
| Wife: | He doesn't recall getting that, but he did receive it because you filed a response to strike it and he has it listed as one of the items he received. |
| Husband's Counsel: | That's – that's the things that you filed. |
| | Your Honor, just so the record is clear, everything that she's just testified to is on this sheet. All the amounts that she just told the Court for KUB, for Tennessee Pediatric, all of that she used this hearsay sheet to testify to without the proper foundation and it shouldn't have been admitted, and I'd like to mark it as an exhibit. |
| The Court: | Well, you – the – do you know or do you not know what your bills are, the amount that you've been billed by these various entities? |
| Wife: | The outstanding? No, I don't have that in the forefront in my mind – |
| The Court: | Not outstanding. I'm talking – |
| Wife: | -- because I can't even – |
| The Court: | -- total charges that have been paid or should be paid. |
| Wife: | Do I know them? |
| The Court: | How did you arrive at these figures? |
| Wife: | From the bills I've been sent. |
| Husband's Counsel: | Hearsay. |
| The Court: | Okay. The bills you've been sent? The bills that you owe? |

| | |
|---|---|
| Wife: | Yes. |
| The Court: | Okay. And the bills that you owe was what you say is on there? |
| Wife: | Correct. |
| The Court: | We'll make a copy of that list of bills and whatever you filed as an exhibit. You may refer to that and testify as to what you say the outstanding indebtedness is. |
| Wife: | Thank you, Your Honor. |
| The Court: | [to Husband's Counsel] You can cross-examine her on this. |

Whereupon the court provided Husband's counsel with the sheet of writing upon which Wife had listed what she believed to be marital debt. This writing was subsequently entered into the record as an exhibit.

This exhibit constitutes one sheet of paper with the typed heading, "Outstanding Marital Debt," and a typed list of debts categorized under eleven separate headings with specific debts and corresponding amounts included under each heading. The typed list reflects no letterhead or date stamp and appears to be Wife's creation, for instance, under a category entitled "Smoky Mountain Risk Management, LLC taxes and liabilities," the following is typed in first-person voice: "I have no idea what the amount of debt is and will not have any idea until a tax accountant can be brought in for review." As Wife testified, the record reflects that she attached the same writing entitled "Outstanding Marital Debt" as an exhibit with a "Motion for a Default Judgment on Property Division" she filed on September 16, 2014, and for which she certified service the same day to Husband through his counsel. Husband did reference Wife's motion for default judgment in his motion to strike filed September 17, 2014.

Pursuant to Tennessee Rule of Evidence 612, the trial court allowed Husband's counsel to inspect the writing at issue, to cross-examine Wife thereon, and to introduce the writing into evidence. The Advisory Commission's Comments to Rule 612 explain the following procedure for use of a writing to refresh recollection on direct examination:

> Only if a witness's memory requires refreshing should a writing be used by the witness. The direct examiner should lay a foundation for

necessity, show the witness the writing, take back the writing, and ask the witness to testify from refreshed memory.

The trial court established through its questions that Wife needed her self-created list to remember exact amounts. We note that the court was somewhat constrained by Wife's self-represented status on direct examination. To the extent that a procedural error occurred because Wife was allowed to retain the written list while testifying after refreshing her memory, we determine such error to be harmless inasmuch as the list was provided to Husband's counsel for cross-examination purposes and was admitted as an exhibit. *See, e.g., State v. Dishman*, 915 S.W.2d 458, 461 (Tenn. Crim. App. 1995) ("Because they were not taken back, there appears to have been error by the manner in which the log entries were used [to refresh the witness's memory]. We believe, however, any error was clearly harmless in the context of the entire record.").

Husband argues that the court erred by denying his request to preserve the remainder of the red file folder for appellate review. *See* Tenn. R. Evid. 612. The court also, however, denied Wife's request to consult any documents contained within the file folder other than the top sheet subsequently provided to Husband's counsel and admitted as an exhibit. Moreover, upon our careful review of the record, we find no indication that Wife consulted any other part of the file folder during her testimony.[7] Husband is not entitled to relief on this issue.

VII. Spousal Support and Child Support

Husband contends that the trial court erred by originally awarding and setting the amount of temporary support without conducting an analysis of the applicable statutory factors for determining spousal support or utilizing the Child Support Guidelines. He therefore asserts that the court's December 7, 2012 order setting temporary support, inclusive of spousal support and child support, in the amount of $3,500.00 per month should be ruled void or voidable and that all arrearage judgments subsequently entered should be vacated. Husband further contends that the court erred in setting child support and spousal support in its subsequent orders. As to the final judgment, Husband asserts that the court erred in setting the amount of child support and in setting the amount, type, and duration of spousal support. Wife maintains that in setting child support and spousal support, the trial court properly considered the parties' respective incomes, Husband's

---

[7] Husband also argues that the trial court abused its discretion by denying his counsel's request to stand close to Wife during her testimony in order to see the document as she referred to it. In denying the request, the court found that counsel's presence close to Wife would cause him to "tower[] over" her and would be "intimidating." Having determined that the court allowed Wife to consult solely the one document provided to Husband's counsel, we determine Husband's argument in this regard to be unavailing.

ability to pay, Wife's need as the disadvantaged spouse, her role as the Children's primary caregiver, and the necessity of Wife's devoting significant caretaking time to A.Y. Upon our careful review, we determine that the evidence does not preponderate against the trial court's findings regarding the parties' respective incomes for child support purposes or the court's awards of alimony *in futuro* and alimony *in solido* to Wife. We do determine, however, that the court erred by not including an income shares worksheet demonstrating calculation of child support according to the Child Support Guidelines. For the purposes of reviewing Husband's support issues in this action, we first set forth in detail the sequence of the trial court's factual findings and orders regarding both child support and spousal support.

A. Temporary Support Orders

Husband first argues that the trial court erred by entering its December 7, 2012 Temporary Support Order setting Husband's temporary support obligation in the amount of $3,500.00 monthly. In this order, the court stated in relevant part:

> Upon motion by [Wife], testimony of the Parties, the record as a whole and for good cause shown it is therefore:
>
> **ORDERED JUDGED AND DECREED** that:
>
> * * *
>
> [Husband] is to pay to [Wife] the amount of three thousand, five hundred dollars ($3,500.00) per month in support. This amount is without a presumption of correctness and will be used to offset any permanent support orders.
>
> Further [Wife] is to use the support in order to maintain household expenses as per the list attached.

(Paragraph numbering omitted.) Attached to the order is a handwritten list of household expenses, totaling $3,434.47. The trial court judge signed this order on December 5, 2012, and it is undisputed that the court conducted a hearing on that date. There is, however, no transcript of said hearing included in the record.

As Wife notes in her brief on appeal, we are unable to review the trial court's factual findings stemming from the December 5, 2012 hearing because we have not been provided with a transcript of the proceeding or a statement of the evidence. We must therefore assume that a preponderance of the evidence supported the trial court's factual

28

findings at this hearing. *See Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 48 (Tenn. Ct. App. 2013) ("'It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment.'") (quoting *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)). *See also Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012) ("'The duty to see to it that the record on appeal contains a fair, accurate, and complete account of what transpired with respect to the issues being raised on appeal falls squarely on the shoulders of the parties themselves, not the courts.'") (quoting *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043 at *1 (Tenn. Ct. App. Feb. 6, 2001)).

On December 14, 2012, Husband filed a motion for contempt, alleging that Wife had relocated the Children to Ohio without permission of the court. Wife previously had filed her motion requesting permission to relocate on November 9, 2012. Upon these motions, the trial court conducted a hearing on January 11, 2013. In an order entered March 22, 2013, *nunc pro tunc* to January 11, 2013, the court, *inter alia*, granted Wife temporary leave to relocate to Ohio and ordered Husband to continue paying $3,500.00 in monthly support and "to bring current any amounts not paid since the prior order." Husband argues that the court failed to consider what he asserts was Wife's reduction in living expenses when she relocated. Inasmuch as this hearing concerned Wife's and the Children's relocation, the court was clearly aware that Wife's living situation had changed. The court's order states that the hearing was conducted "upon outstanding Motions by [Wife], outstanding Motions by [Husband], testimony of the Parties, [Husband] appearing telephonically, [and] the record as a whole . . . ." This Court, however, has not been provided with a transcript or statement of the evidence summarizing the January 11, 2013 hearing. We must therefore assume that a preponderance of the evidence supported the trial court's factual findings at this hearing as well. *See Brown*, 428 S.W.3d at 48.

### B. Orders Setting Separate Child Support and Spousal Support

The trial court next heard proof regarding spousal support at a hearing conducted on April 2, 2014. At issue were the parties' competing motions for contempt, as well as Husband's August 7, 2013 motion to amend prior orders to reduce support, retroactive to the December 7, 2012 order. Husband's counsel asserted that the $3,500.00 originally set in support was based on conversations between Husband's former counsel and Wife's counsel and that there was no corresponding documentation of income. The court questioned Husband regarding his 2012 income relevant to the time support was set and found that Husband had failed to present any documentation to refute the court's previous findings. Specifically as to the prior amount ordered, the court stated:

29

Regardless of the issue about the support I've set, that amount was based on the information that was given, and [Husband] sounds like it was pretty accurate. So if anything the amount of support that . . . the Court ordered to be paid to [Wife] was on the low side. So it will not be modified as far as retroactively if you have something before the Court to ask for it to be modified today, going forward.

The trial court then addressed Husband's motion to modify support prospectively. Husband testified that he "bring[s] home . . . $100,000." Husband's counsel presented Husband's payroll records for March 2013 through February 2014, indicating gross compensation of $132,310.00 for the twelve-month period. Husband testified that after his expenses, including $484.00 paid monthly in child support for his daughter from a previous relationship, he could afford to send only $1,750.00 monthly in "child support" to Wife. He acknowledged that he had not been sending the full $3,500.00 previously ordered.

Wife presented her 2013 federal income tax W-2 form, reflecting her part-time employment with Goodwill and gross compensation of $3,581.50 for the year. Wife's counsel represented Wife's income as approximately $447.69 per month. Regarding her monthly expenses, Wife testified that at the time of this hearing, she and the Children had moved into a home purchased by Mr. Bower, with whom she had entered into an oral agreement to pay $650.00 per month in rent. She acknowledged that she previously had completed courses in college toward a nursing degree and that she was able-bodied. She insisted, however, that she could not maintain employment outside the home because of the care required by A.Y.

Upon this presentation of proof at the April 2, 2014 hearing, the trial court found Husband's yearly gross income to be $130,000.00. The court also entered a judgment against Husband in the amount of $19,935.00 for unpaid support. Concerning A.Y.'s need for special care, Wife presented a deposition, dated February 27, 2014, given by Lorie D. Hamiwka, M.D., a pediatric neurologist with special training in epilepsy, practicing at Nationwide. Dr. Hamiwka's deposition testimony addressed her treatment of A.Y., as well as A.Y.'s diagnosis and special needs. The trial court reviewed Dr. Hamiwka's deposition and relied on it to find that it was in A.Y.'s and the other Children's best interest for A.Y. to receive treatment at Nationwide in Ohio. The court set forth a co-parenting schedule to apply when Husband was in the United States, subsequently clarifying this schedule to give Husband credit for six weeks of co-parenting time with the Children for child support purposes.

Regarding Wife's ability to earn income, the trial court specifically found that Wife was "required to provide care for [A.Y.] in the home that restricts her ability to earn

an income, to provide herself an income that she can generate with her constraints being at home." The court therefore declined Husband's request to impute higher income to Wife and determined her yearly income to be $5,000.00. With these findings as to income, the court directed counsel for the parties to prepare an income shares worksheet according to the Child Support Guidelines by April 9, 2014. The court reserved the issue of spousal support, taking it under advisement pending review of the income shares worksheet. When Husband's counsel questioned whether the court would hear further proof regarding spousal support, the court stated that "especially if things change," it would "revisit the issue for a final hearing."

On April 15, 2014, Wife filed a motion for entry of an order incorporating these findings, and Husband filed a motion for reconsideration. Husband attached to his motion his 2013 federal income tax W-2 form, which reflected a gross amount for "wages, tips, other compensation" of $95,729.99. At a hearing upon these motions conducted on April 28, 2015, Husband's counsel argued that his W-2 form, which he had not presented during the previous hearing, should be relied on by the court as proof of his income. Wife's counsel argued that the W-2 did not appear to include Husband's housing and travel compensation. The trial court granted Husband's motion to reconsider but found the payroll records previously submitted by Husband to be a more accurate representation of his total income than the W-2. The court therefore maintained its previous finding that Husband's income was at least $130,000.00 per year. The transcript reflects that at the close of the hearing, the court considered an income shares worksheet presented by Wife's counsel on which she had calculated child support according to the court's findings regarding the parties' respective incomes and co-parenting time. The court adopted this calculation, setting child support in the amount of $1,842.00 per month. The court then set spousal support in the amount of $1,000.00 per month.

Concerning its basis for the award of spousal support, the trial court stated at the close of the hearing:

> [Wife's] need absolutely – as a matter of fact, she probably has a greater need than what I've ordered. [Husband] probably has a greater ability to pay than what I ordered for any of the Court's purposes. The Court is of the opinion if I'm in error, then I'm in error in not awarding her more spousal support for her needs, her limited ability to earn income outside of the home due to the constant care that is needed for the minor child.

The court entered a written order on the same day, stating the following specific findings of fact in pertinent part:

31

The Husband was previously ordered on October 5, 2012 to pay three thousand five hundred dollars ($3,500.00) per month to the wife for support with no presumption of correctness.[8]

The Husband had paid only twenty-three thousand four hundred and thirty dollars ($23,430.00) to the Wife, leaving a deficiency of thirty-nine thousand five hundred and seventy dollars ($39,570.00).

The Husband is entitled to credit for payments he made on the vehicle operated by the Wife, the vehicle operated by the Husband, the Husband's cellular telephone, and the Husband's automobile insurance inasmuch as the Wife was to have paid those obligations from the support that the Husband was to have paid to the Wife.

The Husband expended two thousand one hundred and thirty dollars ($2,130.00) for his round-trip flight to the United States for the Thanksgiving Holiday. The Husband is entitled to credit for one-half (1/2) of that expense against his support obligation in the amount of one thousand sixty-five dollars ($1,065.00).

After giving all credits due to the Husband against his support obligation and one-half of his airfare for the Thanksgiving Holiday trip, the Husband owes the Wife nineteen thousand nine hundred and thirty-five dollars ($19,935.00) and the Wife is entitled to judgment against the Husband in that amount.

The Wife is entitled to a Wage Assignment.

The Husband's gross income for child support purposes is one hundred thirty thousand dollars ($130,000.00) per year.

The Wife's gross income for child support purposes is five thousand dollars ($5,000.00) per year. The Wife's income is reasonable in light of the fact that she has to provide care for [A.Y.], the parties' minor child and she makes an effort to generate income.

---

[8] Wife also referenced an October 5, 2012 order of temporary support in her November 9, 2012 "Motion for Leave to Relocate and Motion for Contempt." The October 5, 2012 order is not in the record on appeal, and Husband begins his rendition of the facts with the December 7, 2012 order. We therefore have not addressed the trial court's October 5, 2012 support order in this analysis.

> The Husband is entitled to co-parenting time, but spends limited time in the country annually. Further, the Husband's inability to predict the dates which he will be in the country and the lack of regularity of the times when the Husband will be in the country make it difficult to create a schedule which would work each year. The Husband shall receive credit for 6 wks. [weeks] co-parenting time per year.
>
> The Wife is entitled to spousal support and the Husband has the ability to pay spousal support.
>
> The minor child, [A.Y.], has numerous complex serious health issues which require extensive medical attention, extraordinary care on a daily basis, and which frequently change.

(Paragraph numbering omitted.) The court did not, however, attach a permanent parenting plan or income shares worksheet to this order.

Husband subsequently filed a motion to modify the spousal support order on May 9, 2014, alleging that Wife had failed to make a payment owed on the Van and requesting that the court assign that debt to Husband and reduce spousal support accordingly. The trial court conducted a hearing on May 28, 2014, upon Husband's motion to modify, as well as the parties' competing motions for contempt, which had been filed in the interim since the April 28, 2014 order. At the close of this hearing, the court, *inter alia*, denied Husband's motion to modify spousal support and granted the parties a divorce on stipulated grounds. Although the court found that Wife had not paid one Van payment, it further found that she had not missed the payment willfully. The court also determined that Husband had made a Van payment in the amount of $663.14 and reduced the arrearage judgment against him by that amount. Finally, the court directed that spousal support and child support would remain the same as long as Husband's employment situation remained unchanged. At the close of this hearing, in response to a question from Husband regarding what would take place during the final hearing, the trial court stated:

> As long as your income remains what I found it to be, or remains what it is, regardless of whether my findings were correct or not, because you can appeal if you think I'm wrong. You know, the spousal support, child support is going to stay the same. I intend to leave the parenting time the same until you are back stateside, and then we can modify it at that time, but I basically tried to give you, you know, time to be with your children any time you're here.

* * *

I'm not going to change that [co-parenting time] unless you're – until you're stateside, I'm not going to do anything different than I've already done. So everybody needs to hear that.

You're divorced. Child support is what it is. Spousal support is what it is. You've got assets and debts. It sounds to me like that's the only thing that is left, and you know, that needs to be just divided up.

In its June 12, 2014 order memorializing these findings, the trial court adopted its child support and spousal support orders from the April 28, 2014 order, directing that Husband would continue to pay $1,842.00 monthly in child support and $1,000.00 monthly in spousal support. The court did not, however, attach a permanent parenting plan or income shares worksheet.

On September 12, 2014, Husband filed a "Motion to Adjust Child Support and Terminate any Further Spousal Support." To this motion he attached a memorandum of law and proposed income shares worksheet, asserting that his gross monthly income should be calculated at $8,250.00 and that Wife's gross monthly income should be imputed at $1,256.00. Husband presented no new documentation, other than his own affidavit, in support of his proposed adjustment to the parties' incomes.

During the opening of trial on September 23, 2014, the trial court denied Husband's motion to adjust child support and terminate further spousal support. The court clarified that the $1,000.00 in monthly spousal support previously ordered was to continue as alimony *in futuro* and would therefore be "modifiable up or down depending on change of ability to pay and need . . . ." The court specifically stated as to spousal support that it had considered the twelve statutory factors "very carefully in assessing that original amount." In the amended final decree, the court incorporated its April 28, 2014 and June 12, 2014 orders as to child support and spousal support, with the clarification that spousal support "may be modified in the future as the parties' needs or ability to pay changes, except the van payment to be made by Husband which is not modifiable." The court further awarded to Wife $10,500.00 for attorney's fees, which this Court will treat as an award of alimony *in solido*. *See Gonsewski*, 350 S.W.3d at 113. Concomitant with both the final decree and subsequently with the amended final decree, the court attached a permanent parenting plan commensurate with its orders as to co-parenting time and child support. The court did not, however, attach an income shares worksheet to either the final decree or the amended final decree.

34

## C.  Final Child Support Judgment

In positing that the trial court erred in setting the amount of child support, Husband argues that the court abused its discretion by (1) declining to modify its earlier determination of Husband's income for child support purposes upon Husband's presentation of his 2013 W-2; (2) declining to impute minimum-wage income to Wife; and (3) calculating the amount of child support without utilizing the income shares worksheet in accordance with the Child Support Guidelines.  We will address each of Husband's arguments in turn.

As noted previously, "we review child support decisions using the deferential 'abuse of discretion' standard of review," which "requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives."  *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  *See also Massey v. Casals*, 315 S.W.3d 788, 798 (Tenn. Ct. App. 2009) ("We note that determinations of child support lie within the discretion of the trial court.").

As this Court has recently explained:

> In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division.  Tenn. Code Ann. § 36-5-101(e)(2).  Tennessee's Child Support Guidelines have the force of law. *Jahn v. Jahn,* 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996).  Statutes and regulations pertaining to child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources."  *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000); *see also* Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(e).  Courts are therefore required to use the child support guidelines "to promote both efficient child support proceedings and dependable, consistent child support awards."  *Kaatrude,* 21 S.W.3d at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240–02–04–.01(3)(b), (c).

*Sykes v. Sykes*, No. M2012-01146-COA-R3-CV, 2013 WL 4714369 at *2 (Tenn. Ct. App. Aug. 28, 2013) (footnote omitted).

The applicable definition of gross income as provided in the Child Support Guidelines is as follows in pertinent part:

Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes, but is not limited to, the following:

    (i) Wages;

    (ii) Salaries;

    (iii) Commissions, fees, and tips;

    (iv) Income from self-employment;

    (v) Bonuses;

    (vi) Overtime payments; . . .

Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)1. The Child Support Guidelines also provide for inclusion of fringe benefits in gross income when such benefits reduce personal living expenses. *See id.* at ch. 1240-02-04-.04(3)(a)4.

In determining the amount of Husband's gross income for child support purposes, the trial court relied on the payroll records presented by Husband during the April 2, 2014 hearing, as well as Husband's testimony during that hearing. Husband testified that he "br[ought] home" approximately $100,000.00 yearly, which would indicate an amount greater than $100,000.00 yearly in gross income. His payroll records, entitled "Check Activity with Detail," reflected the following "Gross Pay" amounts for March 31, 2013, through February 28, 2014:

| Payroll Date | Gross Pay |
|---|---|
| March 31, 2013 | $10,675.00 |
| April 30, 2013 | 10,675.00 |
| May 31, 2013 | 10,675.00 |
| June 30, 2013 | 11,675.00 |
| July 31, 2013 | 10,703.00 |
| August 31, 2013 | 10,703.00 |
| September 30, 2013 | 10,703.00 |
| October 31, 2013 | 11,703.00 |
| November 30, 2013 | 10,703.00 |

| | |
|---|---|
| December 31, 2013 | 10,703.00 |
| January 31, 2014 | 10,974.00 |
| February 28, 2014 | 12,418.00 |
| | |
| Twelve-Month Total | $132,310.00 |

Upon Husband's subsequent motion to reconsider the amount of child support, the trial court revisited the issue during the April 28, 2014 hearing. Husband had attached to his motion his 2013 federal W-2 form, which he previously had not presented. For the calendar year of 2013, Husband's W-2 form reflected "wages, tips, other compensation" in the amount of $95,729.99. Husband argued that the court should accept the amount reflected on his W-2 as authoritative. He presented no other evidence to explain the difference between the twelve-month average of his payroll records for the time period spanning March 2013 through February 2014 and the compensation reported on his W-2 for the time period spanning January through December 2013.

We conclude that the trial court did not abuse its discretion by relying on Husband's payroll records, as well as Husband's prior testimony, in determining Husband's income for child support purposes and thus declining to modify the amount of child support based on Husband's subsequent presentation of his W-2 form. Husband's argument rests on his assertion that his W-2 form was intrinsically a more reliable source than the payroll records he also presented to the court, as well as his previous testimony heard by the court. We disagree. We note, for instance, that Husband's payroll records include a monthly lodging allowance that, although apparently not included as compensation for tax purposes, would be included as a fringe benefit toward income for child support purposes. *See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.04(3)(a)4.(ii). Tennessee's Child Support Guidelines provide that "reliable evidence of income" for child support purposes may include "tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years for calculating retroactive support." *See id.* at 1240-02-04-.04(3)(a)2.(iv)(I)1. The evidence does not preponderate against the trial court's determination of Husband's income for child support purposes.

Husband also asserts that the trial court erred by declining to impute at least minimum-wage income to Wife for child support purposes. He argues that because Wife is a high school graduate with some college education and courses completed toward a nursing degree, the court should have imputed income for full-time employment to her. As relevant to Husband's argument, the Child Support Guidelines provide that additional gross income may be imputed to a parent "[i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-02-04-.04.(3)(a)2.(i)(I). The Guidelines further provide the following factors

the trial court may consider when making a determination of willful and voluntary underemployment or unemployment:

(I)    The parent's past and present employment;

(II)   The parent's education, training, and ability to work;

(III)  The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life. In considering whether there should be any imputation of income to a stay-at-home parent, the tribunal shall consider:

     I.    Whether the parent acted in the role of full-time caretaker while the parents were living in the same household;

     II.   The length of time the parent staying at home has remained out of the workforce for this purpose; and

     III.  The age of the minor children.

(IV)  A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent;

(V)   <u>The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future</u>;

(VI)  Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII) Any additional factors deemed relevant to the particular circumstances of the case.

38

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2.(iii) (emphasis added).

During the April 2, 2014 hearing, the trial court determined Wife's income for child support purposes to be $5,000.00 annually. The court relied upon Wife's 2013 W-2 form reflecting slightly less than this income from her part-time employment completing projects at home for Goodwill. In declining to impute any additional income to Wife, the court explicitly found that Wife was "required to provide care for [A.Y.] in the home that restricts her ability to earn an income." Husband at no time presented evidence to dispute that A.Y. required special care for his medical needs. The court in its April 28, 2014 order, subsequently incorporated into the final judgment, specifically found that Wife's gross income of $5,000.00 per year was "reasonable in light of the fact that she has to provide care for [A.Y.], the parties' minor child and she makes an effort to generate income." Considering the factor of Wife's role as caretaker of A.Y., as well as the other Children, we conclude that the trial court did not abuse its discretion in declining to impute additional income to Wife for child support purposes. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2.(iii).

Finally, Husband asserts that the trial court erred by setting the amount of child support without using the income shares worksheet, pursuant to the Child Support Guidelines. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(1)(b) ("The use of the Worksheets promulgated by the Department is mandatory in order to ensure uniformity in the calculation of child support awards pursuant to the rules."). The transcript of the April 28, 2014 hearing reflects that the court ordered Husband's child support obligation set in the amount of $1,842.00 upon submission of Wife's former counsel's calculations according to the income shares worksheet, utilizing the parties' respective incomes and co-parenting time determined by the court. However, the record before us contains no income shares worksheet attached to the final decree; the amended final decree; the permanent parenting plan; or either of the orders, originally entered April 28, 2014, and June 12, 2014, that were incorporated by reference into the final and amended final decrees. We must therefore vacate the trial court's judgment as to the amount of child support. We remand for the limited purpose of child support calculation according to the Child Support Guidelines, utilizing the income shares worksheet, and adjustment of the amount of child support if indicated, retroactive to the amended final decree. We emphasize that we discern no reversible error in the trial court's determinations of the parties' respective incomes or co-parenting time and that the court should therefore calculate child support based upon its previous findings.

## D. Final Spousal Support Judgment

As to spousal support, Husband asserts that the court erred by granting to Wife awards of alimony *in futuro* in the amount of $1,000.00 monthly and alimony *in solido* in the amount of $10,500.00 for attorney's fees. Upon our thorough review of the record, we disagree with Husband on this issue.

Tennessee law recognizes four types of spousal support: (1) alimony *in futuro*, also known as periodic alimony; (2) alimony *in solido*, also known as lump-sum alimony; (3) rehabilitative alimony; and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d) (2014); *Mayfield*, 395 S.W.3d at 115. Our statutory scheme indicates a legislative preference favoring the short-term forms of spousal support, rehabilitative and transitional alimony, over the long-term types of support, alimony *in futuro* and alimony *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Mayfield*, 395 S.W.3d at 115; *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007).

It is well settled that "trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Mayfield*, 395 S.W.3d at 114; *see also Fickle v. Fickle*, 287 S.W.3d 723, 736 (Tenn. Ct. App. 2008). Tennessee Code Annotated § 36-5-121(i) (2014) provides that when determining the nature and amount of an alimony award, the trial court should consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

40

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"Although each of these factors must be considered when relevant to the parties' circumstances, 'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457).

## 1. Alimony *in Futuro*

The trial court awarded to Wife $1,000.00 monthly in alimony *in futuro*. Although shorter-term alimony is preferable under Tennessee law, alimony *in futuro* may be appropriate when rehabilitation of the economically disadvantaged spouse is not feasible. *See* Tenn. Code Ann. § 36-5-121(d)(4). Tennessee Code Annotated § 36-5-121(f)(1) further provides:

Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with

reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

As the trial court noted, alimony *in futuro* is modifiable, such that it may be "increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." *See* Tenn. Code Ann. § 36-5-121(f)(2)(A).

In clarifying its award to Wife of alimony *in futuro* during the final hearing, the court stated that it had considered the twelve statutory factors "very carefully in assessing that original amount" of $1,000.00 per month. Upon our review of the record, we determine that the court emphasized the statutory factors of the parties' disparate income and relative earning capacity (factor 1) and the extent to which it would be undesirable for Wife to seek employment outside the home due to her role as custodian to the Children (factor 6). *See* Tenn. Code Ann. § 36-5-121(i). The court found Wife's role as custodian especially persuasive due to A.Y.'s special medical needs and Husband's employment overseas and resultant unavailability as a custodial parent. This finding indicates that in her current situation, Wife would also be constrained from completing further training toward employment (factor 2). *See id.*

It is well settled that although all relative factors must be considered, "'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs*, 250 S.W.3d at 457). We note that in awarding alimony *in futuro*, the court explicitly found modifiable spousal support to be appropriate, presumably due to the possibility that the parties' situation could be altered by a change in Husband's employment or A.Y.'s condition. We determine that the award to Wife of $1,000.00 monthly in alimony *in futuro* was within the discretion of the trial court and supported by a preponderance of the evidence presented regarding Wife's need and Husband's ability to pay, as well as the evidence regarding the remaining statutory factors. We further determine the amount to be appropriate based on the purpose of rendering the standard of living reasonably comparable between the two households. *See* Tenn. Code Ann. § 36-5-121(c)(2).[9]

---

[9] In the conclusion of his principal brief on appeal, Husband requests that the amounts he paid in temporary spousal support during the pendency of this action be "credited" to him as transitional alimony. He provides no support in his argument for such a "credit" and does not raise transitional alimony as an issue in his statement of the issues. *See* Tenn. R. App. P. 27 (delineating the requirements of appellate briefs). Husband's request in this regard is denied.

## 2. Alimony *in Solido*

The trial court also awarded to Wife $10,500.00 in attorney's fees owed to one of her former attorneys. As our Supreme Court observed in *Gonsewski* :

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

350 S.W.3d at 113 (internal citations omitted). Furthermore, this Court has stated:

> Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms,* 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church,* 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez,* No. E2012-02056-COA-R3-CV, 2013 WL 5436752 at *8 (Tenn. Ct. App. Sept. 27, 2013).

As determined in the previous section of this opinion, the trial court's assessment of the applicable statutory factors weighed in favor of an award of alimony to Wife. Wife demonstrated her nominal income and the constraint placed upon her potential for employment by A.Y.'s special needs. Husband argues that Wife had received a gift of

attorney's fees previously paid by her father. Wife testified to the contrary, however, that Mr. Bower had loaned her funds to pay attorney's fees during the initial proceedings in this action and that she still owed that debt to Mr. Bower. Wife further testified that she owed an outstanding debt in the amount of $10,500.00 to her former attorney and had not been able to borrow funds to pay said debt. Husband argues that because Wife failed to present an affidavit from the attorney delineating the fees incurred, the court erred in accepting the amount of this debt. The trial court, however, explicitly found Wife's testimony credible in this regard. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002) (explaining that the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.). We note also that Wife's former attorney withdrew from representation in May 2014, citing Wife's inability to continue paying fees, and that Wife proceeded self-represented from that time through the pendency of this appeal. We conclude that the trial court properly found that Wife had demonstrated financial inability to pay her outstanding attorney's fees and that Husband had the ability to pay a portion of those fees. We determine no abuse of discretion in the court's award of alimony *in solido* in the amount of $10,500.00 toward Wife's attorney's fees.

Husband also argues that the trial court's attribution of debt associated with the parties' Van to Husband was essentially an award of alimony *in solido* to Wife and that such was in error. We disagree with Husband's characterization of the trial court's attribution of debt associated with the Van. In its amended final decree, the court stated the following regarding the parties' vehicles within a section entitled, "Equitable Division of Marital Estate":

> The parties' van is awarded to Wife; the truck awarded to Husband. Husband should assume the indebtedness of the truck in its entirety. Husband shall pay the van payments until such time as the present indebtedness owing thereon is retired[.]

At the close of trial, the court explained its ruling regarding the vehicles as follows:

> The Court does accredit [Wife's] testimony about the value of the vehicles and finds that there's $5,500 in equity in the pickup truck and there is a – the van has a minus $4,500 in value. The Court is going to order that [Husband] pay that total which the Court has so far at $5,908.72. He is to pay all of that indebtedness as an adjustment of the equities of the parties.

The trial court thus allocated debt associated with the vehicles as part of its equitable distribution of the marital estate. The parties possessed very few material assets at the time of the final judgment, such that in distributing the marital estate, the respective

44

equity or lack thereof in each vehicle was one of the few adjustments the court could make in awarding property to each party.

We determine no further award of alimony *in solido* in the trial court's judgment beyond the award of $10,500.00 in attorney's fees, and Husband has not raised the issue of the equitable distribution of the marital estate. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). In reaching this conclusion, we emphasize also that we determine no reason to disturb the trial court's $19,935.00 arrearage judgment against Husband, which the court subsequently reduced by $663.14 for a remaining arrearage judgment in the amount of $19,271.86. Husband is not entitled to relief on this issue.

## VIII. Bailment

Husband also contends that the trial court erred by declining to find that Wife had a bailment duty in regard to his stereo and sound system. When questioned concerning these items during trial, Wife testified as follows:

> I'm asking that as far as the sound system is concerned, that is an issue between [Husband] and my father because their belongings were intertwined with each other and I have no idea whose – whose is whose. I don't want any monetary value for the sound equipment that was [Husband's]. I just don't want to be a party to even dividing it up because I have no idea what is what.

Husband presented no evidence at trial regarding the value of the stereo and sound system or exactly what equipment was his. Regarding this equipment, the trial court stated in its amended final decree:

> All personal property in present possession or control of the parties is awarded to that party and the other party divested of any interest therein, with the exception of the stereo equipment. The Court finds that ownership of that property is an issue that is to be resolved between Wife's father and Husband. To the extent that the stereo is marital property, it is awarded to Husband and Wife is divested of any interest therein.

Our Supreme Court has defined a bailment as "a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it." *Argis Investigative Gp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 98 S.W.3d 159, 162-63

45

(Tenn. 2002). Husband argues that the stereo system was Husband's "separate property" and that a bailment duty thus arose by operation of law as to Wife. First, we note that the stereo system was awarded to Husband within the trial court's distribution of the marital estate and was not classified by the court as "separate property." *See McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3 (Tenn. Ct. App. Apr. 16, 2010) ("Because Tennessee is a 'dual property' state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate."). Moreover, Husband has cited no controlling authority, and our research has revealed none, establishing a bailment duty in Tennessee between spouses in a divorce action. We decline to extend such a duty under the circumstances of this case. Husband's argument regarding this issue is unavailing.

## IX. Conclusion

For the reasons stated above, we vacate the trial court's calculation of Husband's child support obligation. We remand for the limited purpose of child support calculation according to the Child Support Guidelines, utilizing the income shares worksheet and the previous findings entered by the trial court concerning, *inter alia*, the parties' respective incomes and co-parenting time.[10] We affirm the trial court's judgment in all other respects. This case is remanded to the trial court for recalculation of Husband's child support obligation, enforcement of the judgment, and collection of costs below. Exercising our discretion, *see* Tenn. R. App. P. 40, costs on appeal are taxed to the appellant, Jason Richard Yocum.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[10] Husband requests in the conclusion of his brief that if this Court "finds any issue has to be remanded that the court order that this case be re-assigned to a different judge on remand." Husband has filed no motion for the trial court judge's recusal and has provided no argument in support of this request. *See* Tenn. Sup. Ct. R. 10B § 1.01 ("Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion."); Tenn. R. App. P. 27. His request for reassignment to a different trial court judge is therefore summarily denied.